Brian T. Fitzsimons (PA Bar No. 208510)
fitzsimonsb@sec.gov
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Phone:  202-551-5905
Fax:  202-772-9286
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | Case No. 3:18-cv-00386 |
| **Plaintiff,** | **COMPLAINT** |
| **v.** | |
| **ROBERT M. MORANO,** | |
| **Defendant.** | |

Plaintiff U.S. Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY

1.     This case involves unlawful insider trading by Robert M. Morano ("Morano") in the securities of UTi Worldwide, Inc. ("UTi"), a supply chain services company based in Long Beach, California.  In October 2015, Morano, who was an employee of UTi, traded on material nonpublic information that DSV Air & Sea Holdings A/V ("DSV"), a Danish transport and logistics company, had entered into an agreement to acquire UTi.

2.     Morano was a senior communications specialist at UTi responsible for assisting the company in publishing press releases and other communications.  On October 8, 2015, a

senior executive of UTi informed Morano of DSV's pending acquisition of UTi, so they could prepare for the company's public announcement of the acquisition that was scheduled for the next day. Morano knew or was reckless in not knowing that the information about the pending acquisition of UTi was both material and nonpublic.

3.      Immediately after receiving the confidential information about DSV's pending acquisition, in breach of his duty to UTi and its shareholders, Morano logged on to three brokerage accounts he controlled and purchased a total of 17,515 shares of UTi in the open market, at an average price of $4.78 per share. The next day, October 9, 2015, DSV and UTi publicly announced the acquisition, and the market price of UTi shares increased over 50% on heavy trading and closed at $7.13 per share. Following the public announcement, Morano sold all of the UTi shares he had purchased the previous day. Morano's illicit profits from insider trading in UTi securities totaled $38,242.

4.      By engaging in the conduct alleged in this Complaint, Morano violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission seeks a permanent injunction, disgorgement of Morano's ill-gotten gains with prejudgment interest, and a civil penalty.

## JURISDICTION AND VENUE

5.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1].

6.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1 & 78aa]. Defendant, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or the mails, or the

facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

7.     Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa] because Defendant resides in and because one or more acts or transactions constituting the violation occurred within the District of Oregon.

8.     Assignment to the Portland Division is appropriate because the events giving rise to the Commission's claims occurred, among other places, in Multnomah County, Oregon.

## DEFENDANT

9.     Robert M. Morano, age 49, resides in Portland, Oregon.  At all times relevant to the conduct alleged in this Complaint, Morano was employed as a communications specialist at UTi, and worked remotely from his residence in Portland, Oregon.  Morano was an employee of UTi from April 2010 through January 2016.

## OTHER RELEVANT ENTITIES

10.     UTi Worldwide, Inc., a global supply chain services and solutions company, is incorporated in the British Virgin Islands and based in Long Beach, California.  Prior to being acquired by DSV Air & Sea Holdings A/S in January 2016, UTi's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)], and traded on the NASDAQ.

11.     DSV Air & Sea Holdings A/S, a global supplier of transport and logistics services, is a Danish company headquartered in Hedehusene, Denmark.  DSV is a public company with securities listed on the NASDAQ Copenhagen Stock Exchange.

## FACTS

12.     At all times relevant to the conduct alleged in this Complaint, Morano was an employee of UTi, and as such owed a duty of trust and confidence to the company and its shareholders.  Pursuant to his employment agreement and company policy, Morano had a duty not to trade on or otherwise misuse confidential information.  Morano's employment agreement with UTi contained confidentiality and non-disclosure provisions that prohibited Morano from disclosing or misusing the company's confidential information.  In addition, the company had a "Policy Concerning Unauthorized Disclosures and Insider Trading" that prohibited employees, including Morano, from, among other things, using material nonpublic information for personal gain in connection with trading in UTi securities.  The policy expressly provided that information about mergers and acquisitions was presumed to be material.  Over the course of his employment at UTi, Morano received training on the company's insider trading policy and affirmed that he read and understood the policy.

13.     On October 8, 2015, after several weeks of confidential negotiations, DSV and UTi signed an agreement pursuant to which DSV would acquire UTi at a purchase price of $7.10 per share.  The acquisition price represented a premium of 50% over the market price of UTi stock, and valued the acquisition at approximately $1.35 billion.  DSV and UTi, which were both public companies, made plans to publicly announce the acquisition agreement the next morning, on October 9, 2015.

14.     Morano was a communications specialist at UTi, and was responsible for assisting the company with publishing press releases and other company communications.  On the afternoon of October 8, 2015, a senior executive at UTi informed Morano by telephone at his home in Portland, Oregon of the pending acquisition of UTi, so they could prepare for the

company's public announcement of the acquisition scheduled for the next day.  In providing this material nonpublic information to Morano, the executive told Morano that the information was confidential and instructed him to strictly maintain the confidentiality of the information about the acquisition until after the public announcement the very next day.

15.    Morano knew or, given the information that the UTi executive provided to him, was reckless in not knowing, that the information about the pending acquisition of UTi was both material and nonpublic.  The UTi executive told Morano that the information was highly confidential and that he should keep it confidential during the time that they were preparing the press release.  Further, Morano knew that UTi was being acquired – information the company told its employees was presumed to be material.  Finally, Morano believed that the price of UTi shares was going to rise after the acquisition was announced.

16.    As an employee of UTi, Morano had a duty not to trade on that information.  In breach of his duty, on the afternoon of October 8, 2015, immediately after being informed of the acquisition, Morano, while in possession of, on the basis of, and/or by using material nonpublic information about the acquisition, purchased UTi stock.  On the afternoon of October 8, 2015, after learning of the pending acquisition and from his home in Portland, Oregon, Morano logged on to three separate brokerage accounts that he controlled and purchased in the open market a total of 17,515 shares of UTi.  Morano's average purchase price was $4.78 per share.

17.    The next day, October 9, 2015, DSV and UTi publicly announced that they had entered into an agreement for DSV to acquire UTi at a price of $7.10 per share.  Following the public announcement, the market price of UTi shares increased over 50% on heavy trading that day and closed at $7.13 per share.  The day after the public announcement and the resulting significant increase in the market price of UTi stock, Morano sold all the UTi shares he had

purchased the previous day.  Morano's illicit profits from insider trading in UTi securities totaled
$38,242.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

18.    The Commission re-alleges and incorporates by reference paragraphs 1 through
17, above.

19.    Defendant engaged in illegal insider trading, by trading in UTi securities, while in
possession of, on the basis of and/or by using material nonpublic information regarding DSV's
pending acquisition of UTi, when he knew, or given the information that he did know, was
reckless in not knowing, that the information about the pending acquisition was material and
nonpublic, and in breach of his duty of trust and confidence to UTi.

20.    By trading in UTi securities, while in possession of, on the basis of, and/or by
using material nonpublic information regarding DSV's pending acquisition of UTi, Defendant
directly or indirectly, in connection with the purchase or sale of securities, by use of the means or
instrumentalities of interstate commerce, or the mails, or the facilities of a national securities
exchange:

    a.    employed devices, schemes, or artifices to defraud;

    b.    made untrue statements of material fact or omitted to state material facts
    necessary in order to make the statements made, in light of the circumstances under
    which they were made, not misleading; and/or

    c.    engaged in acts, practices, or courses of business which operate or would
    operate as a fraud or deceit upon any persons, including purchasers or sellers of the
    securities.

21.     By engaging in the foregoing conduct, Morano violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter Final Judgment:

### I.

Permanently restraining and enjoining Defendant from, directly or indirectly, engaging in conduct in violation of Section 10(b) Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5];

### II.

Ordering Defendant to disgorge, with prejudgment interest, the illicit trading profits resulting from the conduct alleged in this Complaint; and

### III.

Ordering Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

### IV.

Granting such other and further relief as the Court may deem just and necessary.

## DEMAND FOR A JURY TRIAL

The Commission demands a jury trial on all counts alleged in this Complaint.

DATED:  March 5, 2018                    Respectfully submitted,

/s/  Brian T. Fitzsimons

_____
Jan M. Folena (PA Bar No. 74108)
Brian O. Quinn (DC Bar No. 450013)
Brian T. Fitzsimons, fitzsimonsb@sec.gov
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5020
Phone: (202) 551-5905 (Fitzsimons)
Fax:  (202) 772-9189 (Fitzsimons)
Attorneys for Plaintiff
Securities and Exchange Commission